| |
|---|
| UNITED STATES OF AMERICA |
| v. |
| JOHN MILTON AUSBY, |
| Defendant. |

Criminal Action No. 72-67 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION AND ORDER

Having been convicted of the murder of two women, the defendant, John Milton Ausby, now faces re-trial for the murder of a third woman, Deborah Noel, after the D.C. Circuit directed vacatur of his conviction. *See United States v. Ausby*, 916 F.3d 1089, 1095 (D.C. Cir. 2019).[1] The murders of these three women occurred during a three-month period in 1971 in "the same neighborhood" within Northwest, Washington, D.C. and led to the defendant's convictions, after jury trials, of all three murders in 1972 and 1973. *See* Gov't's Opp'n at 1, 16, ECF No. 28. Now, after serving forty-seven years in prison for these three murders, the defendant seeks to be released pending re-trial for the felony murder of Ms. Noel. *See* Def.'s Mot. for Pretrial Release, ECF No. 25; Def.'s Supplemental Mot. for Pretrial Release ("Def.'s Suppl. Mot."), ECF No. 27; Def.'s Reply, ECF No. 29.

Based on the parties' briefing and evidence proffered at a hearing on June 7, 2019, the defendant's Motion for Pretrial Release was denied. *See* Min. Entry (June 7, 2019). This

---

[1] The parties have been directed to submit, by June 14, 2019, "a joint proposed order 'to vacate [the defendant's] conviction,' . . . consistent with the D.C. Circuit's mandate." Min. Order (June 7, 2019) (quoting *Ausby*, 916 F.3d at 1095). As the D.C. Circuit noted, the defendant was convicted of both "felony murder and rape while armed," but he has "fully served his rape sentence, leaving his life sentence for murder." *Ausby*, 916 F.3d at 1091.

Memorandum Opinion and Order sets out the findings and reasons for that denial. *See* 18 U.S.C. § 3142(i)(1) (requiring that a detention order "include written findings of fact and a written statement of the reasons for the detention"); *see also United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011) (per curiam) (noting that the Bail Reform Act requires pretrial detention order be supported by "a clear and legally sufficient basis for the court's determination" in written findings of fact and a written statement of the reasons for the detention or in "the transcription of a detention hearing" (internal quotation marks omitted) (quoting *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988) (per curiam))).

## I.     BACKGROUND

This case has a long history, dating back to 1972, and thus, a brief review of the factual and procedural history is necessary context for resolution of the instant motion. The defendant was originally tried and convicted by a jury of the rape and murder of Ms. Noel in 1972, and then sentenced to life in prison on the felony murder conviction and a concurrent sentence of 10 to 30 years for rape while armed. *Ausby*, 916 F.3d at 1091. The defendant was also convicted at a separate trial of murdering two other women, Sharon Tapp and Sherry Frahm, whom the defendant shot and killed in October 1971, just a few months before the charged murder of Ms. Noel on December 14, 1971. *See* Gov't's Opp'n at 1, 16. For the murders of Mses. Tapp and Frahm, the defendant was sentenced on January 15, 1973 to two concurrent terms of 10 to 30 years' imprisonment, to run concurrently with the sentences for the rape and murder of Ms. Noel. *Id.* The prison terms for the defendant's murders of Mses. Tapp and Frahm have been completed. *See* Def.'s Suppl. Mot. at 8 n.8.

With respect to the defendant's convictions for the rape and murder of Ms. Noel, the evidence submitted at the defendant's trial included testimony from a forensic expert that hairs

found at the murder scene were microscopically identical to the defendant's hair. *Ausby*, 916 F.3d at 1090. In 2015, however, the government informed the defendant that the expert hair testimony presented at his trial was false and misleading, and that the government knew or should have known this at the time of the trial. *United States v. Ausby*, 275 F. Supp. 3d 7, 9 (D.D.C. 2017), *rev'd on other grounds*, 916 F.3d 1089 (D.C. Cir. 2019). Based on this concession, the defendant filed a habeas petition, pursuant to 28 U.S.C. § 2255, forty-four years after he was sentenced, challenging his conviction on the ground that the government's knowing use of the false hair testimony materially affected the outcome of his trial, in violation of the Fifth Amendment and *Napue v. Illinois*, 360 U.S. 264 (1959). *See id.*

Citing the testimony of the twenty-three witnesses, other than the forensic expert's hair testimony, presented by the government over the course of the four day trial, *id.* at 10, and that the "prosecution only briefly discussed the hair evidence in its opening and closing arguments, devoting significantly more time" to other evidence connecting the defendant to Ms. Noel's rape and murder, *id.* at 30, this Court found "overwhelming evidence against him, even absent the false hair matching testimony," *id.* at 32, and denied the defendant's habeas petition, *id.* The evidence presented against the defendant included, for instance, "oil vials and [a] fingerprint" at the crime scene that "were conclusively linked to the defendant, and the testimony of two expert witnesses establish[ing] that the defendant's loaded gun fit the profile of the likely murder weapon." *Id.* at 8–9. Plus, "[t]hree witnesses saw the defendant in the apartment building in the week preceding the murder, one of whom saw the defendant loitering outside the victim's apartment on two separate evenings." *Id.* at 9. Moreover, the defendant admitted to the seller of the oil vials the day after the murder that he had lost some vials "going through a window," and

three oil vials were found on the ground below the victim's window, tying the defendant to the crime scene. *Id.* at 13, 31, 32.

The D.C. Circuit saw the case differently, however, concluding that the forensic expert's false hair-matching testimony "could . . . have affected the judgment of the jury." *Ausby*, 916 F.3d at 1090 (alteration in original) (internal quotation marks omitted) (quoting *Napue*, 360 U.S. at 271). After acknowledging that the forensic hair expert's testimony was "neither the sole piece of evidence on which the prosecution hung its case nor redundant or irrelevant," the D.C. Circuit concluded this forensic evidence fell "on the material side of the spectrum." *Id.* at 1094–95. Accordingly, the D.C. Circuit ruled that this Court "should have granted" the defendant's "§ 2255 motion to vacate his conviction," and "remanded for proceedings consistent with" its opinion. *Id.* at 1095.

Upon remand, the government announced its intention to retry the defendant for the murder of Ms. Noel, *see* Min. Entry (Apr. 12, 2019), and a trial date is set for October 7, 2019, *id.* The government opposes the defendant's release pending re-trial, arguing that the defendant is a danger to the community. Gov't Opp'n at 10.

## II.    LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, provides that "a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained," and "establishes procedures for each form of release, as well as for temporary and pretrial detention." *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) (citing 18 U.S.C. § 3142(a)). Under 18 U.S.C. § 3142(e), a judge "shall order" the "detention of the [defendant] before trial," if, after a detention hearing held under § 3142(f), and consideration of "the available information concerning" enumerated factors, *id*. §3142(g), "the judicial officer

finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id.* § 3142(e)(1). "[T]he Act requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). Even if the defendant does not pose a flight risk, danger to the community alone is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

> In assessing whether pretrial detention is warranted, the Court must consider four factors:
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a . . . firearm . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). At the detention hearing, both the government and the defendant may offer evidence or proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (per curiam).

## III.    FINDINGS

In considering the requisite statutory factors, the Court concludes, based on the current state of the available record, that the government has demonstrated, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure" the safety of the community, 18 U.S.C. § 3142(e)(1), and therefore orders that the defendant continue to be detained pending his re-trial. These statutory factors are addressed below.

### A. The Nature and Circumstances of the Offense Charged and the Weight of the Evidence Against the Defendant

In determining the nature and circumstances of the offense charged, the Bail Reform Act requires taking into consideration whether the offense is a crime of violence or involves a firearm. *See id.* § 3142(g)(1).[2]  In this case, a grand jury indicted the defendant for felony murder, related to the murder and rape of Ms. Noel, who was found lying on her bed in her apartment unclothed from the waist down and strangled with a stocking around her neck, and with blood pooling next to her head due to being shot in the head at close range. *See* Gov't's Opp'n at 3, 10–11.  The charged conduct was undoubtedly a crime of violence and involved a firearm. *See* 18 U.S.C. § 3156(a)(4) (defining "crime of violence" to include "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another" and "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").  The defendant concedes, as he must, that the charges he faces are "serious."  Def.'s Suppl. Mot. at 4.

Likewise, the weight of the government's evidence, at this point, is strong.  In arguing for the weight of the evidence, the government is relying on testimony from transcripts of the defendant's prior trial, but is "proceed[ing] by way of proffer."  *Smith*, 79 F.3d at 1210.  As described in more detail below, the government's proffer (1) links the defendant's gun to the murder weapon; (2) connects scented oil vials found at the crime scene to the defendant; (3) matches a fingerprint from the crime scene to the defendant; and (4) indicates that the defendant

---

[2]     While a rebuttable presumption of detention applies when a defendant is charged with certain serious enumerated offenses described in §§ 3142(e)(2), (e)(3), and (f)(1), the parties agree that this rebuttable presumption is not triggered in this case because the defendant is not charged with any of the offenses described in § 3142(e)(2)(A) while "on release pending trial," *id.* § 3142(e)(2)(B), and he is not charged in this case with an offense listed in § 3142(e)(3). *See* Rough Tr. of Hearing (June 7, 2019) at 60:14-17 (government's statement that "we do agree [the rebuttable presumption] does not apply"); Def.'s Mot. for Pretrial Release at 3.

engaged in premeditated activity based on several eyewitnesses identifying the defendant as being present outside Ms. Noel's apartment in the days prior to her murder. Taken together, the government's evidence presents a strong case against the defendant.[3]

First, three days after Ms. Noel was found dead in the District of Columbia, the defendant was arrested in New York City in possession of a gun that was loaded, except for two spent cartridges with the same type of bullet that could have been used to shoot Ms. Noel in her temple. *See* Gov't's Opp'n at 6, 7; *id.* at 8 (government's firearms expert "was able to opine, however, that [the bullet] could have been fired from this weapon on the basis of the rifling characteristics" (internal quotation marks and citation omitted)). This fit between the defendant's gun and the profile of the murder weapon was probative of the defendant's tie to the crime, not just to the victim's apartment at some unknown time prior to the murder. *See id.* at 14 ("A firearms expert was able to determine that this same firearm could have fired the bullet that killed Ms. Noel 'on the basis of the rifling characteristics'" (internal quotation marks and citation omitted)).

---

[3] The parties debate whether the weight-of-the-evidence factor requires analyzing the weight of the evidence of the defendant's dangerousness or of the defendant's guilt for the charged offense. *See* Def.'s Suppl. Mot. at 3 (noting a "split in authority" over whether the weight of the evidence concerns dangerousness or guilt, and citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010), and *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), for the proposition that this factor goes toward dangerousness); Gov't's Opp'n at 14 n.2 (arguing that the weight-of-the-evidence factor concerns the defendant's guilt). As another Judge on this Court has artfully explained, "the 'weight of the evidence' factor" does not focus "on the defendant's danger to the community . . . to the exclusion of any consideration of the strength of the government's case." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). The "relevant statutory language does not focus on the evidence of danger to the community . . . ; rather, it requires that the judicial officer consider 'the weight of the evidence *against the person*,'" *id.* (emphasis in original) (quoting 18 U.S.C. § 3142(g)(2)), and the fourth factor in § 3142(g) separately requires consideration of "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," *id.* (internal quotation marks omitted) (quoting § 3142(g)(4)). Nonetheless, "the Bail Reform Act does not purport to—nor could it, consistent with due process—authorize pretrial detention based simply on a preliminary assessment of the defendant's guilt." *Id.* Accordingly, "overwhelming evidence of guilt would not, alone" establish that no conditions of release would reasonably assure the safety of the community. Rather, this factor must be balanced with evidence of dangerousness, and "[i]f the government possesses overwhelming evidence that the defendant is guilty of the crime charged—and the nature of the charged offense involves a danger to the community—then the second factor will help meet the government's burden of persuasion." *Id.*

7

Second, the scented oil vials found at the crime scene directly link this defendant to the charged murder. When the defendant was arrested, he had a "a small vial of perfume," like the scented oil vials found at the murder scene that had been sold to the defendant shortly before the murder. *See id.* at 4–6, 7, 13. The precise location at the crime scene where these oil vials were found are highly probative of the defendant's presence there at the time of the murder. One of the defendant's oil vials was found at the crime scene under the victim's coat at the foot of the bed where she was halfway undressed, raped, and murdered, and another vial was found nearby under a nightstand. *Id.* at 3–4. As this Court has previously pointed out, "[t]hese vials were not found scattered about the apartment, only under and near the victim's body in the room where the victim was raped and murdered," providing "strong circumstantial evidence of the defendant's presence at the time of the murder." *Ausby*, 275 F. Supp. 3d at 31. The defendant also admitted to the seller of the oil vials the day after the murder that he had lost some vials "going through a window," and, indeed, three oil vials were found on the ground below the victim's window, further tying the defendant to the crime scene. Gov't's Opp'n at 5, 6.

Third, at the crime scene, the police found only one fingerprint that "was valid for identification purposes, and that print matched the right thumb impression of the defendant." *Id.* at 5 (internal quotation marks and citation omitted).

Fourth, in the week preceding the murder, three eyewitnesses saw the defendant in Ms. Noel's apartment building, and one of these eyewitnesses saw the defendant loitering outside Ms. Noel's apartment on two separate evenings. *See id.* at 8–9. Moreover, another of these witnesses, who lived two doors down from Ms. Noel, had her apartment broken into on the same day that the defendant was observed in the building, and whoever had broken in left a towel doused in scented oil. *See id.* at 9. The government contends that these facts show that the

charged conduct was not "random," but premediated by the defendant, who had been seen outside the door of the victim's apartment and on her floor days before a final "brutal act[] of violence." *See* Gov't's Opp'n at 11.

The D.C. Circuit noted that Ms. Noel "returned to her apartment . . . for the first time in two weeks" on the day she was murdered, *Ausby*, 916 F.3d at 1090, and the government's evidence, without the false hair testimony, could be "plausibly explained" by the defendant's "theory" that he "had been in Noel's apartment during her two-week absence but not on the day of her rape and murder," *id*. Thus, the Circuit concluded, "[T]here is a reasonable likelihood that the jury could have accepted [this] defense theory." *Id.*

Despite the possibility that the prior jury, which convicted the defendant after less than two hours of deliberation, *Ausby*, 275 F. Supp. 3d at 22, could have accepted this defense theory, the evidence that the government intends to introduce at trial "makes a compelling case for the defendant's guilt," *id.* at 31. In fact, the D.C. Circuit acknowledged that at the defendant's prior trial, "the prosecution introduced substantial evidence connecting [the defendant] to Noel's rape and murder." *Ausby*, 916 F.3d at 1091. For example, the Circuit cited the government's evidence that "vials of scented oil left inside Noel's apartment and beneath her windows belonged to" the defendant, *id.*, without addressing or even mentioning that the scented oil vials found inside of Ms. Noel's apartment were only located near Ms. Noel's dead body, under her "coat lying at her feet" and "[a]t the nightstand, directly alongside the bed," Trial Tr. (Aug. 21, 1971) at 204, and that the defendant returned to the seller of the oil vials the day after Ms. Noel's murder to buy more because he had "lost [his previous purchases] going through a window," *id.* at 306; *see also* Gov't's Opp'n at 4, 6; *Ausby*, 275 F. Supp. 3d at 12, 32. The D.C. Circuit also observed that the government's case was "substantial" against the defendant because "the bullet

that killed Noel potentially . . . matched the handgun [the defendant] was carrying when he was arrested," the defendant "left a thumbprint inside Noel's apartment sometime within ten days of the murder," and other witnesses "encountered a black male in garb resembling [the defendant] in Noel's apartment building in the days leading up to her murder." *Ausby*, 916 F.3d at 1091.

Nonetheless, the defendant urges that the weight of the government's evidence be discounted because he now "faces retrial with little surviving evidence." Def.'s Suppl. Mot. at 4. The government has kept both the Court and the defendant apprised of its search for extant evidence other than the trial transcripts. To date, the government reports that it has been unable to find the physical evidence "collected in this case," and efforts to locate this evidence, or "to confirm loss or destruction" continue. *See* Gov't Status Report ¶ 5 (Apr. 17, 2019), ECF No. 22. In addition, of twenty-one witnesses "essential to" the government's case, only nine are "believed to be alive," *see id.* ¶ 7; Gov't Suppl. Status Report ¶ 4 (Apr. 26, 2019), ECF No. 23. Thus, the government is primarily left only with testimony from the prior trial's transcripts to re-try this case.

The defendant posits that the government's reliance on testimony from the prior trial's transcripts undercuts the weight of the government's evidence since (1) firearms and fingerprinting forensic science has advanced since the defendant's prior trial; (2) the memories of living witnesses have faded, and the rest of the government's witnesses have died; and (3) the government's evidence is likely to be excluded at trial, so the evidence should carry less weight here. None of these arguments undercuts the strength of the government's case at this pretrial detention stage of proceedings.

First, the defendant asserts that the government's prior firearms and fingerprinting expert testimony is no longer reliable in today's "different era of scientific understanding." *Id.* at 5; *see*

*also* Def.'s Reply at 3. The defendant's general assertion that science has advanced in fingerprinting and firearms forensic analysis, however, fails to explain what scientific advances diminish which aspects of the government's intended expert testimony. *See* Def.'s Reply at 3 & nn.3-6. Thus, although the defendant cites in reply to various articles "questioning" prior firearms and fingerprinting forensic science generally, *see id.*, the defendant's conclusory assertion that these articles render the government's expert evidence so unreliable that the evidence should not be accepted here is far from sufficient. Moreover, even assuming the defendant is correct, he has merely shown that the government's expert evidence is "less reliable" now than when first introduced, *id.* at 2, but fails to explain why this evidence may not be used to link the defendant to the murder of Ms. Noel.

Second, the defendant argues that the weight of the government's evidence is weak because "the memories of the few living witnesses presumably have degraded over the last 47 years," and the government intends to rely on the prior trial transcript for testimony of deceased witnesses. Def.'s Suppl. Mot. at 5; *see also* Def.'s Reply at 3. As the government points out, the defendant's concern about fading memories and deceased witnesses is not pronounced, in the context of this pretrial detention proceeding, since there is a trial transcript record of each witness's memory, close in time to the evidence and subjected to cross-examination. *See* Gov't's Opp'n at 15.

Third, and more generally, the defendant argues that evidence from the defendant's prior trial, as established by that prior trial's transcript, is likely to be excluded at the upcoming trial, and once excluded, the government's case will be weak. Def.'s Suppl. Mot. at 5–6. Indeed, the defendant expressly contends, "[C]ourts should disregard, or at least place diminished reliance

on, *suppressed* evidence in assessing the 'weight of the evidence' factor." *Id.* at 5 (quoting *Taylor*, 289 F. Supp. at 67 (emphasis added)).

The defendant, however, has not yet moved for exclusion, let alone successfully excluded, any of the government's intended evidence or attacked the credibility of any of the government's witnesses. Notably, the statute makes clear that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Thus, the testimony that the defendant seeks to exclude is treated as admissible in this context. The Tenth Circuit, in *United States v. Hightower*, 203 F.3d 836 (10th Cir. 2000), made this point clearly, stating: "We are mindful that our ultimate ruling on the validity of the district court's suppression order may have a bearing on the issue of pretrial detention; until the validity of that order has been decided, however, we consider the facts sought to be suppressed as if admissible," *id.* at 836 (citing 18 U.S.C. § 3142(f)).

In conformity with the statutory direction at § 3142(f), other circuits have uniformly held that at the detention hearing stage, the court may consider even evidence that may ultimately be challenged and suppressed. *See, e.g., United States v. Apker*, 964 F.2d 742, 744 (8th Cir. 1992) (affirming district court's conclusion that "magistrate judge erred in disregarding the challenged evidence against [the defendant] before the evidence was found inadmissible by a final order of the court," because "it is appropriate to consider challenged evidence in detention hearings" (citing 18 U.S.C. § 3142(f)); *United States v. Angiulo*, 755 F.2d 969, 974 (1st Cir. 1985) (challenged electronic surveillance information may be considered in detention rulings "at least until a court has decided that the material was not obtained legally").

A district court's decision to suppress evidence later may impact the weight of the evidence and provide grounds to reopen a pretrial detention proceeding. For example, in *United States v. Peralta*, 849 F.2d 625 (D.C. Cir. 1988) (per curiam), the D.C. Circuit held that the district court could reopen its prior decision granting pretrial release and to order the defendant detained, based on the district court's intervening decision declining to suppress evidence, *id.* at 626–27. The Circuit reasoned that the district court's decision not to suppress evidence amounts to "previously nonexistent, material information" that "increased the likelihood of [the defendant's] conviction," and under 18 U.S.C. § 3142(f), a detention hearing may be reopened at any time before trial if material information exists that was unknown at time of hearing. *Id.* Conversely, should the trial transcripts, and the facts established therein, be excluded upon consideration of the defendant's motion *in limine*, the weight of the government's evidence would substantially decrease and potentially provide grounds for reopening this decision on pretrial detention. At this stage, however, the weight of the evidence remains strong.

### B.     History and Characteristics of the Defendant

The original indictment in this case not only charged the defendant with the rape and murder of Ms. Noel, but also charged the defendant with the rape and murder of two other women, Sharon Tapp and Sherry Frahm. *See Ausby*, 275 F. Supp. 3d at 9. "The charges related to Tapp and Frahm were severed and the charges related to Noel's murder were tried first." *Id.* As noted, the defendant was ultimately convicted for shooting and killing Mses. Tapp and Frahm, and those convictions were "not at issue" when the defendant successfully obtained a vacatur of his conviction as to Ms. Noel. *Id.*; *see also* Gov't's Opp'n at 16. At the same time, those murder convictions of two other women are pertinent facts in the defendant's criminal history in assessing his danger to the community.

The defendant contends that he has a "compliant and nonviolent prison record," mitigating the dangerousness demonstrated by his prior murder convictions. *See* Def.'s Suppl. Mot. at 1; Def.'s Reply at 2 (citing Ex. A, Def.'s Federal Bureau of Prisons Disciplinary History (Jan. 4, 2017) ("Def.'s BOP Disciplinary History"), ECF No. 29-1). The defendant's BOP Disciplinary History only minimally diminishes a finding that the defendant remains dangerous today because the defendant's pattern of violence, with prior convictions for the murder of two women, is highly disturbing. Indeed, for one of his two prior murders, the defendant shot a woman "in the head at close range," quite similar to charged conduct in this case. Gov't's Opp'n at 16. Additionally, as the government points out, "the defendant was caught three days after [the] raping and killing [of] Ms. Noel – with a gun and threatening to use it. The fact that he has been incarcerated ever since and was unable to continue to commit violent crimes speaks to the necessity of continued detention and not release." *Id.* at 12.

Next, the defendant argues that BOP psychological data for the defendant "indicates no current or remotely recent concerns," and the defendant has "completed programming in anger management and other areas," Def.'s Reply at 2 (citing Def.'s BOP Psychological Data (Mar. 3, 2010), ECF No. 30 (sealed), and Def.'s BOP Disciplinary History). None of this evidence shows that the defendant's history of violence, particularly towards women, does not present a serious risk of danger to the community. In fact, to the contrary, the BOP Psychological Data confirms that the defendant "denied current psychological symptoms and expressed no desire for psychological services," *see* Def.'s BOP Psychological Data at 1, notwithstanding his two prior convictions for shooting and killing two women. Even more, the defendant's eight hours of anger management programming, *see* Def.'s BOP Disciplinary History at 3, falls far short of showing his violent impulses towards women have been overcome.

Finally, the defendant points out that he is older now and has health issues. *See* Def.'s Suppl. Mot. at 1 (arguing that the defendant is 67 now and has "significant health issues"); *see also* Mem. Supp. Community Placement at 3–4, ECF No. 26 (sealed) (describing defendant's health issues). The defendant's age, and those health issues identified by the defendant, do not make him immobile or incapacitated. As the government indicates, none of the health issues cited would "preclude him from obtaining a firearm, using it to force sex upon a vulnerable individual, and then killing them." Gov't's Opp'n at 13. The defendant's history and characteristics demonstrate that the danger he poses to the community persist and therefore weigh in favor of detention.

## C. The Nature and Seriousness of the Danger to Any Person or the Community that Would Be Posed by the Defendant's Release

As noted above, the defendant's prior convictions for the murder of two women, and his charged involvement in the brutal rape and murder of a third, along with his possession of a firearm and threats to use that weapon at the time of his arrest, provide ample reason to believe that the defendant's release would pose a danger to the community, and no condition or combination of conditions could be imposed that would reasonably assure the safety of the community.

## IV. CONCLUSION AND ORDER

Upon consideration of all of the evidence and the factors set forth in 18 U.S.C. § 3142(g), and the possible release conditions set forth in § 3142(c), the Court finds by clear and convincing evidence that the defendant's pretrial release constitutes an unreasonable danger to the community, and the Court finds clear and convincing evidence that no condition or combination of conditions can be imposed that would reasonably ensure the safety of the community were he to be released pending trial.

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant's Motion for Pretrial Release, ECF No. 25, as supplemented by the Defendant's Supplemental Motion for Pretrial Release, ECF No. 27, is **DENIED;** and it is further

**ORDERED** that the defendant, John Milton Ausby, be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and it is further

**ORDERED** that the defendant be afforded reasonable opportunity for private consultation with counsel; and it is further

**ORDERED** that upon order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the person to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED.**

Date: June 11, 2019

_____
BERYL A. HOWELL
Chief Judge