UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN MILTON AUSBY,<br>            Defendant. | Criminal Action No. 72-67 (BAH)<br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

The defendant, John Milton Ausby, was originally tried and convicted by a jury in 1972, on one count of Felony Murder and one count of Rape while Armed, for the rape and murder of Ms. Deborah Noel. *United States v. Ausby*, 916 F.3d 1089, 1091 (D.C. Cir. 2019). Forty-seven years later, in 2019, the defendant successfully moved under 28 U.S.C. § 2255 to vacate his Felony Murder conviction, on the ground that the government's knowing use of false hair-matching testimony materially affected the outcome of his trial, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). *See id.* at 1092, 1095. As a result, the defendant has been granted a new trial on the Felony Murder count, *see United States v. Ausby*, No. CR 72-67 (BAH), 2019 WL 2870232, at *8 (D.D.C. July 3, 2019), charging that the defendant "did kill Deborah Noel while perpetrating and Attempting to Perpetrate the Crime of Rape," Indictment (Retyped) (July 17, 2019), ECF No. 48.

Since the grant of the defendant's § 2255 motion, "the government has worked to locate case-related paperwork, physical evidence, trial witnesses, and additional individuals with information related to Ms. Noel's murder" for the defendant's new trial. Gov't's Reply at 2, ECF No. 61. Recently, in July 2019, "the government learned that the" D.C. Office of the Chief

1

Medical Examiner ("OCME") still "has slides made from swabs" of Ms. Noel's vaginal and rectal areas during her autopsy in 1971. Gov't's Mot. for Order Requiring Def. to Submit to Saliva Samples/Buccal Swab & for Permission to Consume DNA Evidence ("Gov't's Mot.") at 3, ECF No. 50; Gov't's Reply at 2, 3.

At the defendant's prior trial, Dr. James L. Luke, the "Chief Medical Examiner of the District of Columbia," testified about these slides, Trial Tr. (Aug. 23, 1972) at 579, which were prepared "at a time that predates the use of DNA for" identification purposes, Gov't's Reply, Ex. D, Aff. of Bruce Budowle ("Budowle Aff.") ¶ 2, ECF No. 61-4. There, Dr. Luke explained that when performing Ms. Noel's autopsy, he took "swabs" from Ms. Noel's "mouth, rectum and vagina." Trial Tr. (Aug. 23, 1972) at 583, 585, 589–90. Then, "the swabs were smeared under glass slides for microscopic examination performed by" Dr. Luke, who observed that "[t]he swabs from the mouth and rectum were negative" for sperm, but the "smear of the swab from the vagina showed large numbers of intact sperm." *Id.* at 590.

After finding "two rectal and two vaginal slides" from Ms. Noel's autopsy on July 22, 2019, Dr. Roger Mitchell, Jr., Chief Medical Examiner for the District of Columbia, "looked at the swabs" and, consistent with Dr. Luke's testimony, "described the sperm on the vaginal slides as 'plentiful.'" Gov't's Reply at 2, 3, 8. Hence, the government now seeks "to conduct DNA testing on" the OCME slides to compare any "interpretable DNA profile" obtained from them against the defendant's DNA sample. Gov't's Mot. at 3.

To that end, pending before the Court is the government's Motion for Order Requiring Defendant to Submit to Saliva Samples/Buccal Swab & for Permission to Consume DNA Evidence, ECF No. 50. Specifically, the government seeks (1) an "order" that "the defendant [ ] submit to the taking of a buccal swab" DNA sample, Gov't's Mot. at 1, and (2) permission "to

sample and consume the entirety of the biological material on one of the vaginal slides," and to "consume biological material from both" rectal slides, Gov't's Reply at 13. The defendant opposes both requests. For the reasons discussed below, the government's motion is granted. Each of the government's requests is discussed in turn.

I.   **BUCCAL SWAB**

The government may obtain a buccal swab DNA sample from the defendant. In *Maryland v. King*, the Supreme Court upheld the collection of an arrestee's DNA sample using a "buccal swab," pursuant to a Maryland law that permitted "Maryland law enforcement authorities to collect DNA samples from" arrestees charged with certain "serious crimes" for "DNA identification" as part of "a routine booking procedure." 569 U.S. 435, 439, 443, 465 (2013). There, the Supreme Court reasoned that the "substantial" government interest in the "need for law enforcement officers in a safe and accurate way to process and identify the persons and possessions they must take into custody," *id.* at 449, 461, outweighed the privacy interests of a defendant who had "been arrested on probable cause for a dangerous offense that may require detention before trial," *id.* at 463, since an arrestee's "expectations of privacy and freedom from police scrutiny are reduced," *id.*, and "the intrusion of a cheek swab to obtain a DNA sample is a minimal one," *id.* at 461, that is "quick and painless," *id.* at 444, and poses "no threat to the [defendant's] health or safety," *id.* (internal quotation marks and citation omitted).

Here, the government's "interest is both stronger and more specific" than was the governmental interest in *King*. *United States v. Haight*, No. CR 15-88 (JEB), 2015 WL 7985008, at *1 (D.D.C. Dec. 3, 2015). Unlike in *King*, the defendant "has been indicted at the time collection is sought, not just arrested," *id.*, and his pretrial detention has been ordered, *see United States v. Ausby*, No. CR 72-67 (BAH), 2019 WL 2452988, at *4 (D.D.C. June 11, 2019),

"thereby demonstrating a greater likelihood of his involvement in the offense," *Haight*, 2015 WL 7985008, at *1; *see also United States v. Proctor*, 230 F. Supp. 3d 1, 2–3 (D.D.C. 2017) (allowing buccal swab DNA samples where "[d]efendants [were] not mere arrestees," but rather had "been indicted by a grand jury and whose conduct a neutral magistrate ha[d] found warrant[ed] pre-trial detention"). Indeed, as previously explained when the defendant's pretrial detention was ordered, "the government's evidence" against the defendant, "at this point, is strong." *Ausby*, 2019 WL 2452988, at *4. Namely, the government, which relied on "testimony from transcripts of the defendant's prior trial" but proceeded by "way of proffer," provided evidence that "(1) links the defendant's gun to the murder weapon; (2) connects scented oil vials found at the crime scene to the defendant; (3) matches a fingerprint from the crime scene to the defendant; and (4) indicates that the defendant engaged in premeditated activity based on several eyewitnesses identifying the defendant as being present outside Ms. Noel's apartment in the days prior to her murder." *Id.*

Additionally, "[w]hile in *King*, the DNA collected in a subsequent arrest" for a general identification database "helped tie the defendant to a prior rape, the collection here is not intended for a general database, but for specific comparison to actual evidence in this case." *Haight*, 2015 WL 7985008, at *1. "[I]nstead of merely seeking to identify" the defendant, "the government hopes to link" him to Ms. Noel's murder, by "matching his DNA to the genetic material it may locate on the" OCME slides. *Id.*; *see also Proctor*, 230 F. Supp. 3d at 2 (permitting buccal swab DNA sample where "the collection here is not intended for a general database, but for specific comparison to actual evidence in this case" (internal quotation marks omitted) (quoting *Haight*, 2015 WL 7985008, at *1)). Thus, the government's interest in comparing the defendant's DNA to any DNA obtained from the OCME slides outweighs "'the

4

minor intrusion' that a buccal swab necessitates." *Proctor*, 230 F. Supp. 3d at 2 (quoting *King*, 569 U.S. at 465).

Although the defendant asserts that the government has not shown "that the vaginal and rectal slides contain DNA of a sufficient quality to generate a profile suitable for comparison," Def.'s Opp'n at 8, the Fourth Amendment does not require the government in this case to "make any preliminary showing that there is analyzable material on the" OCME slides "in order to justify a request to search [the defendant] by buccal swab," *Proctor*, 230 F. Supp. 3d at 2. The "likelihood of [the defendant's] involvement in" the murder and rape of Ms. Noel, *id.* (internal quotation marks omitted) (quoting *Haight*, 2015 WL 7985008, at *1), and the "four slides created during the autopsy of Ms. Noel, two of which contain sperm," Gov't's Reply at 7, easily establishes that obtaining the requested buccal swab from the defendant is a reasonable step since this may yield possible evidence that the defendant murdered Ms. Noel while raping her, *see, e.g., United States v. Wilhere*, 89 F. Supp. 3d 915, 919 (E.D. Ky. 2015) (finding "probable cause" for "DNA buccal swab" because "Defendant is suspected of murder and . . . there *might be DNA* on the victim's body that could be compared to Defendant's DNA" (emphasis added)); *United States v. Cesario*, No. 14-CR-92 PJS, 2014 WL 3577436, at *10 (D. Minn. July 18, 2014) (concluding "buccal swab warrant was supported by probable cause because there was a fair probability that the DNA evidence sought would yield evidence of a crime," since defendant's DNA sample was "necessary to compare with 'any *DNA that may*' be recovered from" handgun (emphasis added)).[1]

---

[1] The defendant also claims that the government should produce "an interpretable profile from" the OCME slides before obtaining a buccal swab DNA sample from the defendant to "minimize opportunities for cognitive bias" to affect the government's interpretation of the DNA on the OCME slides, and to "minimize the chance that DNA from the" defendant "will contaminate the evidence" on the OCME slides. Def.'s Opp'n at 9. Dr. Budowle, however, explains that these concerns are unwarranted, because (1) "[f]orensic laboratories, where feasible, will analyze evidence samples prior to analysis of reference samples," so "contamination of the evidence sample by the reference is not possible"; (2) "the interpretation, where feasible, of an evidence profile is performed prior to the

5

Accordingly, "the Fourth Amendment is not offended by allowing the government to retrieve a" buccal swab DNA sample from the defendant. *Proctor*, 230 F. Supp. 3d at 2.

## II. CONSUMPTION OF BIOLOGICAL MATERIAL ON OCME SLIDES

Next, the government proposes to "consume," i.e., "sample," the "biological material" on the OCME slides to assess the quality and quantity of DNA on the slides, and to obtain an "interpretable DNA profile (other than the decedent)." Gov't's Reply at 13, 14, 19. Since these slides are "approaching 50 years of age," and "the conditions" under which "they have been stored are undetermined," the "quality" and "quantity" of DNA on the slides "may be limited" and "cannot" be known "without some testing." Budowle Aff. ¶ 2.

The government's proposal to consume biological material on the OCME slides is different for the two vaginal slides, as compared to the two rectal slides, due to "the detection of sperm on both vaginal slides, but not on the rectal slides." Gov't's Reply at 13. Since "the vaginal slides contain plentiful sperm," the "vaginal slides could have sufficient DNA from the sperm of the male donor," Budowle Aff. ¶ 2, and the government seeks to consume "one of the vaginal slides" in its entirety to "determine if there is sufficient DNA to obtain a DNA profile." *Id.* "If so, then the second vaginal slide would be preserved," *id.*, and if not, "then the second vaginal slide would be consumed," *id.* The two "rectal slides," in contrast, have "no detectable sperm," and thus are likely to "have low quantities of or no DNA from the male donor." *Id.* Hence, the "government seeks to consume both" rectal slides for "the best chance of obtaining a meaningful DNA typing result." *Id.*

---

interpretation of a reference profile, intentionally to reduce bias"; and (3) "the profiles are permanent records," so "if the defense believes that bias entered into the interpretation or comparison, the same data are available for its own expert(s) to demonstrate that such bias may have occurred." Budowle Aff. ¶ 12. Moreover, the government has assured that its DNA testing lab has "has procedures in place to ensure evidence profiles are analyzed independent of reference samples." Gov't's Reply at 12 (citing Ex. E, Bode Statistical Interpretation Protocols, ECF No. 6-5). The defendant's claims of cognitive bias and contamination, therefore, are unpersuasive.

The defendant objects to the government's proposal as a violation of the Due Process Clause of the Fifth Amendment because in his view, (1) the government's consumption of biological material on the OCME slides would violate the government's duty to "preserve that material" and to allow him to independently test the evidence, Def.'s Opp'n at 11; (2) the government lacks a "scientific basis" for its consumption proposal, *id.* at 10; and (3) permitting consumption would be "unjust," *id.* at 13. As discussed here, these arguments are without merit, and consequently, the government may proceed with consumption according to its proposal.

First, the defendant contends that permitting the government to consume biological material on the OCME slides would run afoul of the government's duty to "preserve" material evidence under the Due Process Clause of the Fifth Amendment, and to allow him to "inspect and test the same physical evidence." *Id.* at 11. This argument boils down to a claim that the government must "split" the swabs on the OCME slides so that the defendant may independently test the swabs, too. *See, e.g.*, *United States v. Kingsbury*, 317 F. Supp. 3d 476, 477 (D.D.C. 2018) ("[The defendant] filed a motion to compel the government to test only half of each swab and to preserve the remaining half for [the defendant] to test independently."). The defendant's swab-splitting argument fails.

To be sure, the Due Process Clause imposes "duties on the Government to disclose certain materials and evidence to criminal defendants," *United States v. Vega*, 826 F.3d 514, 533 (D.C. Cir. 2016), including "a correlative duty to preserve that evidence," *id.* "[T]he government's failure to preserve evidence," however, "violates the Due Process Clause only if the evidence is 'material and exculpatory'—in other words, if it is *Brady* material—or if the government destroys the evidence in bad faith, thereby indicating 'by [its] conduct . . . that the

evidence could form a basis for exonerating the defendant.'" *Kingsbury*, 317 F. Supp. 3d at 478 (quoting *Vega*, 826 F.3d at 533, and *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

Here, the defendant is not entitled to splitting the swabs on the OCME slides because he has not shown that the biological material on the OCME slides is exculpatory. *See Kingsbury*, 317 F. Supp. 3d at 478. Indeed, "several courts in this district have rejected" swab splitting because "until the swabs are tested, it is impossible to know whether they contain exculpatory" evidence, and "the results of the testing could be inculpatory." *Kingsbury*, 317 F. Supp. at 478 (citing *United States v. Quinones*, 236 F. Supp. 3d 375, 376 (D.D.C. 2017); *United States v. Anderson*, 169 F. Supp. 3d 60, 65 (D.D.C. 2016); *United States v. Haight*, 153 F. Supp. 3d 240, 241 (D.D.C. 2016)). Indeed, "if 'no more can be said' about the evidence 'than that it could have been subjected to tests, the results of which might have exonerated the defendant,' there is no denial of due process unless a criminal defendant can demonstrate the Government's bad faith." *Vega*, 826 F.3d at 533 (quoting *Youngblood*, 488 U.S. at 57–58).[2]

Second, faced with this line of cases, the defendant switches gears to intimate that the government is acting in bad faith by contending that the government lacks a "scientific basis" for its proposal to "consume one of the vaginal slides and both rectal slides." Def.'s Opp'n at 10. "[T]he Government does not act in bad faith when it consumes genetic material for testing, so

---

[2] The defendant, in passing, also invokes Rule 16 of the Federal Rules of Criminal Procedure to oppose the government's consumption proposal, cursorily claiming that Rule 16 "provide[s] [the] defense an opportunity to view and examine evidence which is material to the preparation of the defense." Def.'s Opp'n at 10. This argument suffers the same flaw as the defendant's swab-splitting argument. Under Rule 16(a)(1)(E), "[u]pon a defendant's request, the government must permit the defendant to inspect . . . tangible objects . . . if the item is within the government's possession, custody, or control," only if "the item is material to preparing the defense," the "government intends to use the item in its case-in-chief at trial," or "the item was obtained from or belongs to the defendant." FED. R. CRIM. P. 16(a)(1)(E). As other judges in this District have explained, "it is impossible to know whether a swab satisfies any of these three criteria until it is tested." *Kingsbury*, 317 F. Supp. 3d at 479 (citing *Anderson*, 169 F.Supp.3d at 65); *Quinones*, 236 F. Supp. 3d at 378 (concluding Rule 16 "does not require the Government to provide [the defendant] with a portion of the collected swabs"). Thus, Rule 16 poses no bar to the government's request.

long as it has a scientific reason for doing so." *Kingsbury*, 317 F. Supp. 3d at 479 (quoting *Quinones*, 236 F. Supp. 3d at 377). In this case, the government "has set forth a sufficient scientific basis for consumption." *Haight*, 153 F. Supp. at 241.

For its consumption proposal, the government relies on a sworn affidavit from its forensic DNA expert, Dr. Bruce Budowle, Director of the Center for Human Identification, and Professor in the Department of Microbiology, Immunology and Genetics at the University of North Texas. Budowle Aff. ¶ 1. Dr. Budowle is "among the foremost experts in the field of DNA profiling." *Haight*, 153 F. Supp. 3d at 241 (quoting *Gov't of Virgin Islands v. Byers*, 941 F. Supp. 513, 523 (D.V.I. 1996)); *see also Anderson*, 169 F. Supp. 3d at 68 (relying on Dr. Budowle's declaration and permitting government's consumption proposal); *Quinones*, 236 F. Supp. 3d at 377 (relying on Dr. Budowle's "sworn statement" to find "no bad faith in consuming the entirety of [a] sample"). Dr. Budowle concluded that the government's proposal is "sound and based on the principle that the overarching goal should be to proceed in a manner that provides the best chance of obtaining a meaningful DNA typing result," Budowle Aff. ¶ 2, without "unnecessarily consum[ing] evidence," *id.* ¶ 14.

Undaunted, the defendant next challenges the scientific basis for the government's proposal by claiming (a) "the government's contracted lab has the ability to assess degradation of a portion of the vaginal slide sample" without "consum[ing] the rest of the vaginal slide," Def.'s Opp'n at 12, and (b) certain scientific articles "suggest[] that consumption of more DNA when a sample is degraded is not recommended," *id.* at 12–13 (emphasis omitted).

Dr. Budowle has rebutted both contentions. With respect to consuming only a portion of a vaginal slide sample to assess degradation, Dr. Budowle "strongly advocate[s] consuming one vaginal slide in its entirety" because "[t]he more manipulations that are undertaken, the greater is

9

the chance to lose precious sample." Budowle Aff. ¶ 5. As to the defendant's claim that the government should not consume more DNA when a sample is already thought to be degraded, Dr. Budowle notes that "nowhere" do the scientific articles relied on by the defendant "recommend that one should not attempt increasing sample to obtain results," *id.* ¶ 8, and "the papers cited in the defense motion in actuality contradict the defense's position," since these "authors support that more degraded DNA placed into an analysis can yield better results," *id.* In any event, "the court need not wade into" this "scientific debate," assuming one exists, and "instead finds simply that the Government's expert supports a finding that there would be no bad faith in consuming" the biological material on the OCME slides as the government proposes. *Quinones*, 236 F. Supp. 3d at 378.

Third, the defendant's assertion that "it would be particularly unjust" to permit the government to consume the biological material on the OCME slides, Def.'s Opp'n at 13, is unpersuasive. As the government points out, Bode Cellmark, the DNA testing lab that the government plans to use, Gov't's Reply at 11, "specifically retains [DNA] extract from the testing where possible," and if DNA extract remains available, the defense may request "to conduct independent testing," *id.* at 22; *see also Kingsbury*, 317 F. Supp. 3d at 479 ("Although the DNA extraction process will consume the swabs themselves, there may be leftover DNA extract (depending on how much genetic material is present on the swabs) that will be preserved in the event the defense decides to request testing."); *Quinones*, 236 F. Supp. 3d at 378 (same); *Anderson*, 169 F. Supp. 3d at 69 (same); *Haight*, 153 F. Supp. 3d at 242 (same).

Furthermore, even if "no DNA extract remains" at the end of testing, that would mean "consumption was absolutely necessary to obtain an interpretable DNA profile," Gov't's Reply at 22, which, as Dr. Budowle explains, "is better for all parties involved," since "generating a

DNA profile is important in determining the source of biological evidence," and "equally as important in being able to exclude an individual who is not the source of the sample," Budowle Aff. ¶ 9. Plus, the defendant "may have an independent expert review the government laboratory's work and may cross-examine any experts involved in the testing." *Anderson*, 169 F. Supp. 3d at 69. Consequently, the government may proceed with its consumption proposal.

### III. CONCLUSION AND ORDER

Upon consideration of the Government's Motion for an Order Requiring Defendant to Submit to a Buccal Swab & for Permission to Consume DNA Evidence, ECF No. 50, for the reasons provided in this Memorandum Opinion and Order, it is hereby

**ORDERED** that the Government's Motion is **GRANTED**; and it is further

**ORDERED** that the defendant submit to the taking of a buccal swab by a representative of the Metropolitan Police Department or District of Columbia Department of Forensic Science; and it is further

**ORDERED** that the government may provide permission to consume to the DNA lab at which it conducts DNA testing on the slides from Ms. Deborah Noel's autopsy, consistent with the proposal for consumption described in the Government's Reply Brief, ECF No. 61.

**SO ORDERED**.

Date: August 7, 2019

_____
BERYL A. HOWELL
Chief Judge